**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

JOHNNY MULLER,

    Plaintiff,

v.                                                                           No. 14-cv-0953 SMV

CAROLYN W. COLVIN, Acting Commissioner of
Social Security Administration,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Plaintiff's Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for a Rehearing [Doc. 18] ("Motion"), filed on May 27, 2015. The Commissioner responded on August 12, 2015. [Doc. 22]. Plaintiff replied on September 18, 2015. [Doc. 23]. The parties have consented to the undersigned's entering final judgment in this case. [Doc. 11]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that, in formulating the residual functional capacity ("RFC") assessment, the Administrative Law Judge ("ALJ") failed to apply the proper legal standards to the evaluation of Dr. Wynne's and Dr. Murphy's opinions. Accordingly, the Motion will be granted to the extent that rehearing is requested on the claim for disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g) (sentence four). The claim for supplemental security income ("SSI") will be remanded for adjudication in the first instance. *See* § 405(g).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied.[1]  *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008).  If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted).  Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981.  This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### **Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

**Procedural Background**

The instant case has a tortuous procedural history. Plaintiff filed claims for benefits at least three times, which necessarily triggered at least three distinct, corollary time periods. To complicate matters even further, one ALJ (whose decision is reviewed herein) inexplicably failed to adjudicate the entire time period before him. That decision, therefore, further split one of the time periods into two. These various time periods and their procedural statuses and relevance require extra effort in sorting out.

As far as the Court is able to discern, Plaintiff has filed three claims for benefits, but only one is relevant here. The first claim was filed in April 2008. That claim was denied, and when Plaintiff failed to appeal the denial, he lost his right to judicial review. Therefore, the April 2008 claim is not before this Court. Plaintiff filed his second claim in February 2009. That claim was also denied but is currently on appeal to federal court (for the second time) before the Honorable Laura Fashing, United States Magistrate Judge, in case number 15-cv-0485 LF (D.N.M.).[3] Plaintiff filed a third claim in October 2010. This third claim is now before the Court.

In his third claim—filed on October 21, 2010—Plaintiff applied for DIB and SSI. Tr. 186−198. He alleged a disability onset date of September 1, 2009. Tr. 24. His claims were denied initially and on reconsideration. *Id*. Plaintiff requested a hearing before an ALJ. *Id*. On July 31, 2012, a hearing was held before ALJ Ben Willner, in Albuquerque, New Mexico. Tr. 24, 57–92. Plaintiff appeared in person with his attorney. Tr. 24, 57–92. The ALJ heard testimony from Plaintiff and an impartial vocational expert, Pamela Bowman. Tr. 24, 85–91.

---

[3] The initial appeal of the second claim (of February 2009) to federal court was heard and remanded to the Commissioner by the Honorable Lourdes A. Martínez, United States Magistrate Judge, in case number 12-cv-0538 LAM.

The ALJ issued his unfavorable decision on January 4, 2013. Tr. 24–45. Although Plaintiff claimed a disability-onset date of September 1, 2009, the ALJ expressly limited his decision to the time period between August 26, 2010, and June 30, 2012. Tr. 24, 45. Having found that the time period between September 1, 2009, and August 25, 2010, had already been adjudicated by another ALJ,[4] ALJ Willner expressly limited his findings "to the time period beginning on August 26, 2010." Tr. 24. He further limited his findings through Plaintiff's date last insured ("DLI") for DIB, which was June 30, 2012, and not beyond. Tr. 45. That would have made sense if the only claim before ALJ Willner had been for DIB. However, Plaintiff also had a claim for SSI. Tr. 186–98 (October 2010 claim for DIB); Tr. 191−98 (October 2010 claim for SSI). ALJ Willner did not adjudicate the SSI claim. *See* Tr. 24–45. Consequently, he did not adjudicate the time period after June 30, 2012.

Preliminarily, the ALJ found that Plaintiff met the insured status requirements for DIB through June 30, 2012. Tr. 27. At step one, he found that Plaintiff had not been engaged in substantial gainful activity between September 1, 2009 (the alleged onset date) and June 30, 2012 (the DLI). *Id.* Accordingly, the ALJ proceeded to step two. *See id.* There, he found that Plaintiff suffered from Major Depressive Disorder, Anxiety Disorder, Organic Mental Disorder/Borderline Intellectual Functioning, and Substance Abuse. Tr. 27–29. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 29–30.

---

[4] The appeal heard by Judge Martínez (of the second claim, dated February 2009) reviewed that ALJ decision dated August 25, 2010. [Doc. 11-4] at 14 (Tr. 78) in case number 12-cv-0538 LAM.

Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 30–43. The ALJ found that Plaintiff has the following RFC:

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels, but with the following nonexertional limitations: he is limited to simple, repetitive tasks, and working primarily with things rather than with people. He is able to maintain concentration, persistence, and pace for two hours at a time before taking a regularly scheduled break and returning to his duties.

Tr. 30. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 43–44. Accordingly, the ALJ proceeded to step five, where he found that through the DLI, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that he could perform. Tr. 44–45.

Ultimately, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, between August 26, 2010, and June 30, 2012, and he denied the DIB claim. Tr. 24, 45. He made no mention of the SSI claim. *See id.* Moreover, because the ALJ expressly limited his findings to the time period through June 30, 2012 (and not after), that later time period—from July 1, 2012, onward—remains entirely unadjudicated.

The Appeals Council denied Plaintiff's request for review on August 19, 2014. Tr. 1−3. That denial made ALJ Willner's January 4, 2013 decision the "final decision" of the Commissioner, which is now ripe for review. Plaintiff timely filed the instant action on October 22, 2014. [Doc. 1]. He requests that both the DIB and SSI claims be remanded for an immediate award of benefits. [Doc. 18]. However, the Court does not see how it can rule on an SSI claim that has not been adjudicated. The Court's jurisdiction under § 405(g) authorizes review of ALJ Willner's decision, but his decision addresses only the DIB claim. Tr. 24–45.

Although the Commissioner seems to suggest otherwise,[5] the Court's only option as to the SSI claim is to remand it for adjudication in the first instance.

## Analysis

The Motion will be granted and the case remanded because, in formulating the RFC assessment, the ALJ impermissibly failed to discuss the weight that he assigned to the opinions of Dr. Wynne and Dr. Murphy. Although Plaintiff alleges other errors, the Court need not reach them. Those other alleged errors may be rendered moot by proper evaluation of these opinions and any consequent changes to the RFC assessment.

### In formulating the RFC assessment, the ALJ failed to explain how he weighed the opinions of Drs. Wynne and Murphy.

Plaintiff argues that remand is warranted because the ALJ failed to apply the correct legal standards in evaluating the opinions of two consultative examiners, Louis Wynne, Ph.D., and Finian J. Murphy, Ed.D. [Doc. 18] at 12–22. In explaining his RFC assessment, the ALJ thoroughly *described* the opinions of Drs. Wynne and Murphy. Tr. 31, 33–34. However, the ALJ did not indicate what weight, if any, he accorded these opinions. *See* Tr. 24–45. At most, the ALJ found that the Global Assessment of Functioning ("GAF")[6] scores assessed by Drs. Wynne and Murphy were lower than a GAF score assessed by treating Nurse Practitioner

---

[5] [Doc. 22] at 2 n.1 ("[T]he fact that the ALJ did not explicitly reference Plaintiff's SSI application is immaterial to this Court's review.").
[6] The GAF scale is used by clinicians to report an individual's overall level of functioning. *See Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed. 2000). A GAF score of 51–60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." *Id.* A GAF score of 41–50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." *Id.*

Dixon.[7]  Tr. 36.  Otherwise, no analysis of Dr. Wynne's or Dr. Murphy's opinions is evident in the decision.  *See* Tr. 24–45.

Although ALJs need not discuss every piece of evidence, they are required to discuss the weight assigned to each medical source opinion.  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 404.1527(e)(2)(ii)).  Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and why.  SSR 96-5p, 1996 WL 374183 at *5.  "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity . . . because the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted));  *see Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) (same).  Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Chapo*, 682 F.3d at 1292 (internal brackets omitted) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)).  Ultimately, ALJs are required to weigh medical source opinions and to provide "appropriate *explanations* for accepting or rejecting such opinions."

---

[7] Embedded in a discussion about records from University Medical Center's ("UMC") Behavioral Health Clinic, the ALJ found that Plaintiff had missed about ten months of treatment (between September 2011 and July 2012) because he said he had been in jail, during which time he said that he had received no medications. Tr. 35–36.  Two weeks after his release from jail, Plaintiff presented at UMC, where he was seen by Ms. Dixon.  The ALJ found:

> It is reasonable to expect [Plaintiff's] overall functioning to deteriorate after several months of incarceration with no psychotropic medications.  However, I note that the GAF assigned ("52") by Ms. Dixon is substantially higher than that GAF's [sic] assigned by Dr. Murphy (GAF of "30" on January 4, 2010) and Dr. Wynne (GAF of "42" on April 14, 2009).

Tr. 36.

SSR 96-5, 1996 WL 374183 at *5 (emphasis added); *see Keyes-Zachary,* 695 F.3d at 1161 (same) (citing 20 C.F.R. § 404.1527 (e)(2)(ii)).

In this case, the Court finds that the ALJ failed to apply the correct legal standard in evaluating the opinions of Drs. Wynne and Murphy. The ALJ failed to specify or explain the amount of weight that he accorded either of these opinions. *See* Tr. 24–45. The error matters because these opinions were more restrictive than the RFC adopted by the ALJ. *Compare* Tr. 320 (Dr. Wynne's opinion), *and* Tr. 311–13 (Dr. Murphy's opinion), *with* Tr. 30 (ALJ's RFC assessment). The dearth of findings on these medical opinions prevents meaningful review of the ALJ's decision. Thus, remand is warranted for proper evaluation of their opinions.

Defendant argues that there is no error. She contends that the ALJ did, in fact, weigh the opinions and ultimately rejected them because they were contrary to the record as a whole and, in particular, contrary to "Plaintiff's ability to function largely independently." [Doc. 22] at 12 (citing Tr. 41–43); *id.* at 10. Further, Defendant argues that the ALJ's decision "makes clear that he discounted [the opinions of Dr. Wynne and Dr. Murphy] for the same explicit reasons he gave for discounting Dr. Davis's opinion." *Id.* at 12–13, n.7. Defendant's position is not persuasive for several reasons.

First, the ALJ did not expressly find that Plaintiff could "function largely independently," as Defendant suggests. *See* [Doc. 22] at 12 (citing Tr. 41–43). Nor is there any finding in the decision that could be interpreted as such. *See id.* Most importantly, though, even if the ALJ had found that Plaintiff could function independently, such a finding would not contradict—and, thus, would provide no basis for rejecting—either Dr. Wynne's or Dr. Murphy's opinion.

Second, it would not be reasonable under the circumstances of this case to infer that the ALJ rejected the opinions of Dr. Wynne and Dr. Murphy for the same reasons that he rejected Dr. Davis's opinion, as Defendant posits. The ALJ rejected Dr. Davis's opinion that Plaintiff was completely unable to function outside the area of his home because Plaintiff himself testified that he leaves his home to find and perform odd jobs.[8, 9] Tr. 42–43. However, neither Dr. Wynne, nor Dr. Murphy opined that Plaintiff could not function outside of his home. *See* Tr. 318–20, 311–14. Therefore, Plaintiff's testimony that he leaves his home to find odd jobs would not be *in*consistent with their opinions—at least not for the same reason that it is inconsistent with Dr. Davis's opinion. Therefore, it would make no sense to transfer the ALJ's reasoning as to Dr. Davis's opinion and supply it as to Drs. Wynne's and Murphy's opinions.

Defendant cites to two cases to support her interpretation of the ALJ's decision (i.e., that the ALJ rejected Dr. Wynne's and Dr. Murphy's opinions for the same reasons that he rejected Dr. Davis's opinion). [Doc. 22] at 12–13, n.7. However, the Court is not persuaded that either case applies. In *Lately v. Colvin*, 560 F. App'x 751, 754 (10th Cir. 2014), the Court of Appeals inferred that an ALJ had rejected the opinion of a medical source for the same reason as the treating source. The medical "opinions" in *Lately*, however, were not opinions as to the

---

[8] Specifically, the ALJ rejected Dr. Davis's opinion because he found it—or at least a portion of it—was inconsistent with the record. *See* Tr. 42–43. The ALJ found that Dr. Davis's opinion that Plaintiff is completely unable to function outside of his home was controverted by Plaintiff's own testimony that he can and does leave his home to look for and perform odd jobs, including approaching potential employers to offer his services and paying attention and staying on task long enough to complete his work well enough to get recommendations for other jobs. Tr. 43. The ALJ determined that these activities demonstrate Plaintiff's ability to talk to others, competently negotiate for jobs, discuss and understand the nature of the work and the amount of payment, and to collect payment. *Id.* The ALJ further explained that Dr. Davis was not a treating source (the implication being that her opinion, therefore, merited less weight). *Id.* The ALJ gave great weight to the opinions of Dr. Prieto and Certified Nurse Practitioner Dixon, who were part of Plaintiff's treatment team at UMC Behavioral Health Clinic. *Id.* The ALJ found that Dr. Prieto and Ms. Dixon "found [Plaintiff's] mental impairments caused moderate symptoms." Tr. 43.

[9] The ALJ also "note[d]" that Dr. Davis was not a treating source. Tr. 43. Like Dr. Davis, Drs. Wynne and Murphy are also one-time examiners.

10

plaintiff's functional limitations. *Id.* Instead, the "opinions" in *Lately* were on the ultimate question of disability. *Id.* The ALJ in that case rejected the treating source's opinion (that the plaintiff was disabled) on the grounds that (1) the opinion was inconsistent with the conservative course of treatment pursued by the treating source, and (2) the opinion was on an issue reserved to the Commissioner, i.e., the ultimate question of disability. *Id.* Under those circumstances, the Court of Appeals inferred that the ALJ had rejected the opinion (that the plaintiff was disabled) of the examining medical source for the same reasons. *Id.*

Neither of those circumstances is present here. Dr. Wynne and Dr. Murphy examined Plaintiff only once, and thus, neither doctor has a past course of treatment with which his opinion could conflict. (Besides, the ALJ did not find that either of their opinions was inconsistent with the treatment that Plaintiff actually did receive at UMC.) More importantly, however, the opinions in question were not on the ultimate question of disability. They are true medical opinions on a number of Plaintiff's specific functional limitations. *See Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008) (explaining that a "true medical opinion" is one that contains a doctor's "judgment about the nature and severity of [the plaintiff's] limitations, or any information about what activities [he] could still perform,") (citing 20 C.F.R. § 404.1527(a)(2)).

Defendant also relies on *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014). In that case, the court declined to reverse on the ground that the ALJ had failed to "expressly state whether he had given [a certain medical] opinion 'controlling weight.'" *Id.* The court reasoned that because it could tell from the decision that the ALJ had declined to give the opinion controlling weight, reversal was not warranted. *Id.* Here, Plaintiff's claim of error is broader than in *Mays*. [Doc. 18] at 13–16. In this case, Plaintiff argues that the ALJ failed to follow the

correct legal standards in evaluating the opinions of Drs. Wynne and Murphy. *Id.* Plaintiff argues that the ALJ not only erred in failing to identify what weight he assigned to the opinions, but also in failing to analyze the opinions in any way. *Id.* Neither *Lately* nor *Mays* is persuasive. The Court declines Defendant's invitation to speculate about the ALJ's evaluation of Dr. Wynne's and Dr. Murphy's opinions. Without findings on their opinions, meaningful review is not possible.

Finally, it is worth noting that Defendant's arguments constitute impermissible post hoc rationalizations. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (Reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision" and may not "supply[] possible reasons" for an ALJ's decision after the fact.). Even if the Court found Defendant's arguments persuasive, the fact remains that the ALJ himself did not make them. *See* Tr. 24–45. Thus, the Court may not rely on them.

## Conclusion

The Motion will be granted. The DIB claim will be remanded for application of the proper legal standard to the evaluation of Dr. Wynne's and Dr. Murphy's opinions in formulating the RFC assessment. The other errors alleged by Plaintiff may be affected by proper consideration of these opinions and the consequent reconsideration of the RFC. Accordingly, those other alleged errors need not be addressed at this time. The SSI claim is remanded for adjudication.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse for Payment of Benefits, or in the Alternative, to Remand for a Rehearing [Doc. 18] is **GRANTED** to the extent that the case will be remanded for rehearing.

**IT IS FURTHER ORDERED** that the Commissioner's final decision as to the claim for disability insurance benefits is **REVERSED**, and this case is **REMANDED** for further proceedings in accordance with this opinion.

**IT IS FURTHER ORDERED** that the claim for supplemental security income is **REMANDED** for adjudication.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**